**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:25-CR-26 |
| | § | |
| DAVID MICHAEL GILLIAM | § | |

**MEMORANDUM AND ORDER**

Pending before the court is David Michael Gilliam's ("Gilliam") Motion to Dismiss the Indictment (#22). The Government filed a response (#25). Having considered the motion, the Government's response, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

On April 2, 2025, a federal grand jury in the Eastern District of Texas returned a single-count Indictment, charging Gilliam with Possession of a Firearm by a Prohibited Person (Convicted Felon), in violation of 18 U.S.C. § 922(g)(1). On August 4, 2026, Gilliam filed notice of intent to proceed to trial. This matter is currently set for jury selection and trial on Wednesday, August 26, 2026.

II. Analysis

A. Predicate Offense

The United States Court Appeals for the Fifth Circuit has held that § 922(g)(1) is not facially unconstitutional but also recognized that it may be unconstitutional as applied to certain defendants on the basis of their predicate conviction. *United States v. Debrow*, No. 25-30380, 2026 WL 2123696, at *2 (5th Cir. July 23, 2026) (citing *United States v. Diaz*, 116 F.4th 458, 467-68 (5th Cir. 2024)). When assessing a defendant's predicate offense, "[t]he relevant

consideration is [the] defendant's 'prior convictions that are punishable by imprisonment for a term exceeding one year.'" *United States v. Hernandez*, 159 F.4th 425, 428 (5th Cir. 2025) (quoting *United States v. Kimble*, 142 F.4th 308, 318 (5th Cir. 2025), *cert. denied*, 2026 WL 135675 (Jan. 20, 2026)). In the Fifth Circuit, the court does not typically "'look beyond' a defendant's predicate conviction 'and assess whether the felon's history or characteristics make him likely to misuse firearms.'" *Debrow*, 2026 WL 2123696, at *2 (quoting *Kimble*, 142 F.4th at 318). Nor does the court consider unproven conduct charged contemporaneously with a defendant's [§ 922](g)(1) indictment or prior conduct that did not result in a felony conviction." *Hernandez*, 159 F.4th at 428. Further, the Fifth Circuit has indicated that courts should not assess the "conduct underlying the predicate, as opposed to the predicate itself." *Debrow*, 2026 WL 2123696, at *2. Thus, in assessing Gilliam's criminal history under § 922(g)(1), this court "may consider prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *United States v. Schnur*, 132 F.4th 863, 867 (5th Cir. 2025) (quoting *Diaz*, 116 F.4th at 467).

In his motion, however, Gilliam asserts: "The Government has designated the predicate conviction on which it relies: theft under $1,500, third offense out of the 178th District Court of Harris County," in case number 1446501. In its response, the Government concedes that although "Gilliam has approximately eight felony convictions" the parties "have agreed to focus on the felony theft conviction listed above to narrow down the *Bruen* claims and to stipulate at trial to that one felony conviction." Accordingly, the court will limit its consideration to the specific theft conviction identified by the parties.

On October 29, 2014, the State of Texas filed an Information alleging that on or about October 27, 2014, Gilliam appropriated "one wallet and one pair of socks" owned by Jason

Roberts, the value of which was under $1,500. The offense was classified as a state jail felony due to Gilliam's prior convictions.[1] The state court, however, granted the prosecution's request to punish the offense as a Class A misdemeanor under Texas Penal Code § 12.44(a). *See* TEX. PENAL CODE § 12.44(a) ("A court may punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for a Class A misdemeanor if, after considering the gravity and circumstances of the felony committed and the history, character, and rehabilitative needs of the defendant, the court finds that such punishment would best serve the ends of justice."); TEX. PENAL CODE § 12.21 (providing that a Class A misdemeanor is punishable by "(1) a fine not to exceed $4,000; (2) confinement in jail for a term not to exceed one year; or (3) both such fine and confinement"). Gilliam entered a plea of guilty to the offense and, on October 29, 2014, the 178th District Court of Harris County sentenced Gilliam to one year of imprisonment.

Gilliam contends that § 922(g)(1) is unconstitutional as applied to him because his predicate felony conviction for theft of property valued at less than $1,500 is not a valid predicate offense to support his § 922(g)(1) charge. Gilliam asserts that the Government cannot demonstrate that the Nation has a historical tradition of disarming someone with a similar criminal history. Accordingly, Gilliam seeks dismissal of the Indictment for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

[1] The Information listed the following offenses of which Gilliam was previously convicted: (1) January 5, 2009, conviction for the Misdemeanor Offense of Theft by Check, (2) February 23, 2009, conviction of the Misdemeanor Offense of Theft by Check, (3) October 10, 2014, conviction of the State Jail Felony Offense of Theft by Check, and (4) July 9, 2007, conviction of the State Jail Felony Offense of Forgery.

B. Dismissal of the Indictment

Federal Rule of Criminal Procedure 12(b)(3)(B) permits a court to dismiss a defective indictment. *See United States v. Patino*, 758 F. Supp. 3d 664, 666 (W.D. Tex. 2024). An indictment predicated on a statute that is unconstitutional is defective and, thus, must be dismissed. *United States v. Barber*, No. 4:20-CR-384-SDJ, 2023 WL 1073667, at *2 (E.D. Tex. Jan. 27, 2023) ("[A]n indictment premised on a statute that is unconstitutional must be dismissed."); *United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010); *see In re Civil Rights Cases*, 109 U.S. 3, 8-9 (1883) ("An indictment is defective if it alleges a violation of an unconstitutional statute.").

C. Second Amendment Challenge

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court refined its approach to analyzing whether a challenged law impinges upon a right protected by the Second Amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Under *Bruen*, if the challenged law impinges upon a right protected by the Second Amendment, the Constitution presumptively protects that conduct and "the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'" *United States v. Rahimi*, 602 U.S. 68August 13, 20260, 689 (2024) (quoting *Bruen*, 597 U.S. at 24); *accord United States v. Hemani*, 608 U.S. ___, 146 S. Ct. 1677, 1685 (2026). Specifically, the Court stated:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the

> government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 18 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

While this analysis demands attention to history, the Supreme Court has "recognized that '[t]he regulatory challenges posed by firearms today are not always the same' as those earlier generations faced." *Hemani*, 146 S. Ct. at 1685 (quoting *Bruen*, 597 U.S. at 24). "Accordingly, to show that a contemporary regulation is consistent with this Nation's historical tradition of firearm regulation, we do not require the government to point to a 'historical twin' or 'precis[e] . . . historical precursors.'" *Id.* at 1685-86 (quoting *Rahimi*, 602 U.S. at 692). Instead, "'the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition.'" *Id.* (quoting *Rahimi*, 602 U.S. at 692). To accomplish that end, the Government "may 'reaso[n] by analogy,' showing that its contemporary regulation is 'relevantly similar' to ones 'well-established' in the Nation's history." *Id.* at 1686 (quoting *Bruen*, 597 U.S. at 28-30).

Title 18, United States Code, Section 922(g)(1) covers Gilliam's conduct.[2] *See Diaz*, 116 F.4th at 467-68 (holding that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)"); *cf. Hemani*, 146 S. Ct. at 1686 (finding that § 922(g)(3)'s unlawful

---

[2] In its response, the Government maintains that "felons are not among 'the people' protected by the Second Amendment" but concedes *Diaz* forecloses this argument. *See Diaz*, 116 F.4th at 467-68 ("Diaz's status as a felon is relevant to our analysis, but it becomes so in *Bruen's* second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." (citing *Bruen*, 597 U.S. at 24)).

user provision burdens conduct presumptively protected by the Second Amendment); *Rahimi*, 602 U.S. at1898 (finding that Rahimi was protected by the Second Amendment even though he had committed family violence). Accordingly, "[t]he burden . . . shifts to the government to demonstrate that regulating [Gilliam's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 24).

The Government avers that Gilliam's as-applied challenge is foreclosed by the holding of the Fifth Circuit in *United States v. Diaz* because Gilliam has a prior felony conviction for theft. 116 F.4th at 472. In *Diaz*, the Fifth Circuit held that "[a]t the time of the Second Amendment's ratification, those . . . guilty of certain crimes—like theft—were punished permanently and severely. And permanent disarmament was a part of our country's arsenal of available punishments at that time." *Id.* Accordingly, the Fifth Circuit held that § 922(g)(1) was constitutional as applied in the case of Diaz, whose pertinent criminal history included a prior conviction for vehicle theft.[3] *Id.*

Indeed, the Fifth Circuit has consistently recognized "theft" as one of "three categories of offenses that doom a defendant's as-applied challenge to [§ 922](g)(1)."[4] *Kimble*, 142 F.4th at 311; *see, e.g.*, *Hemphill*, 2025 WL 1898366, at *1 ("*Diaz* also forecloses an as-applied challenge by an individual convicted of 'theft-related' offenses such as robbery and burglary."); *United*

[3] Diaz also had prior felony convictions for evading arrest and possessing a firearm as a felon. *Id.* at 467. The Fifth Circuit, however, focused on Diaz's vehicle theft conviction: "[A]t least one of the predicate crimes that Diaz's § 922(g)(1) conviction relies on—theft—was a felony and thus would have led to capital punishment or estate forfeiture." *Id.* at 469-70.

[4] The three categories include: "theft, violence, and violating the terms of one's release by possessing arms while on parole." *Kimble*, 142 F.4th at 311.

*States v. Lopez*, No. 24-50182, 2025 WL 1604510, at *2 (5th Cir. June 6, 2025) (holding that because the defendant had a predicate conviction for burglary of a habitation, "*Diaz* likewise forecloses his as-applied challenge" to § 922(g)(1)); *United States v. Thompson*, No. 23-30899, 2025 WL 1276407, at *1 (5th Cir. May 2, 2025) (holding that the defendant's prior felony convictions for theft and burglary foreclosed his as-applied challenge to his § 922(g)(1) conviction); *Schnur*, 132 F.4th at 870-71 ("Based on Schnur's two theft-related felony convictions, *Diaz* forecloses Schnur's as-applied challenge [to § 922(g)(1)]."); *United States v. Medrano*, No. 23-10713, 2025 WL 915406, at *1 (5th Cir. Mar. 26, 2025) ("[T]he court in *Diaz* concluded § 922(g)(1) was constitutional as applied to defendants with underlying felony convictions involving theft."); *United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024) (holding that *Diaz* foreclosed the defendant's as-applied challenge to § 922(g)(1) because the defendant had a prior felony conviction for theft).

Gilliam, however, contends that *Diaz* does not categorically foreclose all as-applied challenges premised on predict offenses involving theft. In support, Gilliam cites to the Fifth Circuit's recent opinion in *United States v. Debrow*, which considered whether the defendant's predicate offense of aggravated criminal damage to property, in violation of Louisiana law, could support a § 922(g)(1) conviction. 2026 WL 2123696, at *1. The Fifth Circuit held that the Government had not met its burden to show that our Nation's history supports permanent disarmament under § 922(g)(1) of similarly situated persons, vacated the district court's denial of the defendant's motion to dismiss his indictment, and remanded the case to the district court for reconsideration in the first instance. *Id*. at *5.

Gilliam contends that "[t]he predicate [in *Debrow*], like the predicate here, was a property crime." The predicate offense at issue in *Debrow*, however, was aggravated criminal damage to property under Louisiana law, which the Fifth Circuit considered as a matter of "first impression." *Id.* at *1. Significantly, the Government did not assert that aggravated criminal damage to property was a theft-related offense, and the circuit court's holding does nothing to detract from its long line of cases upholding theft-related crimes as valid predict offenses for a § 922(g)(1) conviction. *See id.* at *3. Rather, the Government argued that aggravated criminal damage to property is an inherently violent offense and the going-armed laws support disarming those who pose a threat to public safety. *Id.* at *4. The Fifth Circuit, in evaluating the Government's briefing on the Nation's "longstanding tradition of disarming someone" with a similar criminal history, commented that the Government provided "essentially no historical effort" and "spent no more than five pages attempting to meet this burden." *Id.* at *2, *5. Moreover, after determining that the Government failed to meet its burden, the Fifth Circuit did not hold that such a property crime could not support a § 922(g)(1) conviction, but rather, remanded to the district court for reconsideration of these issues in the first instance. *Id.* at *1 *5.

Gilliam also asserts that his predicate offense of theft of personal property under $1,500 is distinguishable from that of Diaz's predicate offense of vehicle theft. Gilliam states that "[f]ounding-era law distinguished thefts by the nature and value of the property stolen." In support, Gilliam cites to the first federal criminal code, enacted in 1790, which provided that a person who stole the personal property of another "shall, on conviction, be fined not exceeding the four-fold value of the property so stolen . . . and publicly whipped, not exceeding thirty-nine stripes." (#22-3, An Act for the Punishment of certain Crimes against the United States, § 16, 1

Stat. 112, 116 (1790)). The Government, however, maintains that the punishment of public whipping was a significant punishment and supports the disarmament of individuals with theft convictions.

Furthermore, the Government identifies other historical regulations that imposed significant punishment for seemingly low-value theft crimes. For instance, the Government notes that the Second Congress authorized capital punishment for theft of mail. *See* An Act to Establish the Post Office and Post Office and Post Roads within the United States, § 17, 1 Stat. 232, 237 (1792). In addition, the Government points out that one of the historical sources cited by *Diaz* recorded an instance of "estate forfeiture for a man found guilty of '[f]eloniously] taking away corn[] & fish[] from d[i]vers[e] p[er]sons.'" *United States v. Matthews*, 2025 WL 105291, *2 (E.D. La. Jan. 15, 2025) (quoting 2 RECORDS OF THE COURT OF ASSISTANTS OF THE COLONY OF THE MASSACHUSETTS BAY 1630–1692, at 32 (John Noble ed., 1904)). The Government also cites to a record of the authorization of capital punishment for the offense of robbing of a "fellow souldier, or neighbour, any thing that is his, victuals, apparell, household stuffe, toole, or what necessary else soeuer, by water or land, out of boate, house, or knapsack." *Matthews*, 2025 WL 105291, *2 (citing Articles, Lawes, and Orders, Divine, Politique and Martiall for the Colony in Virginea, in 3 Tracts and Other Papers Relating Principally to the Origin, Settlement, and Progress of the Colonies in North America from the Discovery of the Country to the Year 1776 48 (Peter Force ed., 1844)). These examples support *Diaz's* conclusion that our country has a historical tradition of severely punishing people who have been convicted of theft—even thefts of articles of personal property of relatively low value. *See Diaz*, 116 F.4th 468-69.

Accordingly, the Government has established that the Nation's historical tradition, as well as Fifth Circuit precedent, support the position that the Second Amendment does not prohibit Congress from barring Gilliam from possessing firearms based on his prior felony theft conviction. Thus, Gilliam's as-applied challenge to § 922(g)(1) fails.

III. Conclusion

In accordance with the foregoing analysis, Gilliam's Motion to Dismiss the Indictment (#22) is DENIED.

SIGNED at Beaumont, Texas, this 13th day of August, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE